COURT OF APPEALS OF VIRGINIA

Present: Judges Elder, Bray and Annunziata
Argued at Norfolk, Virginia


ROBYN LYNN CASTILLO
                                            OPINION BY
v.          Record No. 2444-94-1    JUDGE LARRY G. ELDER
                                          DECEMBER 29, 1995
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                  William F. Rutherford, Judge


          James O. Broccoletti (J. F. Hoen; Zoby &
          Broccoletti, P.C., on brief), for appellant.

          Kathleen B. Martin, Assistant Attorney General
          (James S. Gilmore, III, Attorney General, on
          brief), for appellee.


     Robyn L. Castillo (appellant) appeals her convictions for

driving under the influence of alcohol in violation of Code

§ 18.2-266 and involuntary manslaughter in violation of Code

§ 18.2-36.1(A).  Appellant asserts (1) the trial court erred in

admitting into evidence the results of her breath alcohol

analysis, although she was not arrested for driving under the

influence within two hours of the alleged offense, as required by

Code § 18.2-268.2; and (2) the evidence was insufficient to

support her involuntary manslaughter conviction.  Because the

trial court erroneously admitted the certificate of analysis and

improperly relied on the test results' statutory presumption of

intoxication, we reverse both convictions.

FACTS

Appellant was driving an Isuzu Trooper on October 1, 1993 on Shore Drive in Norfolk.  At approximately 7:05 a.m., Leila Mae Dossey was crossing Shore Drive when appellant's vehicle struck her.  The impact threw Dossey over the hood of the vehicle and onto the windshield before Dossey hit a sign post and fell to the ground.  Dossey was pronounced dead at the scene.

One eyewitness, David Mason, saw appellant's vehicle strike Dossey, brake "a little bit" without skidding, change lanes as Dossey rolled off the hood, and then continue down the street. Another eyewitness, Omar Capodiferro, was driving next to appellant and witnessed appellant's vehicle immediately before it struck Dossey, whom Capodiferro observed crossing the street. There was no evidence of excessive speed or erratic driving other than appellant's swerving in an attempt to avoid hitting the victim.

Police located appellant after Capodiferro reported the accident, and Detective Randy Million observed appellant walking on a street near her parked vehicle.  Million testified appellant's speech was slurred, she smelled of alcohol, she was "very unsteady" on her feet, her clothes were in disarray, and her eyes were glassy and watery.  Million arrested appellant on the charge of "hit and run fatality" at 8:45 a.m.

Officer R.L. Burnette spoke with appellant at her vehicle,

where he advised her of her <u>Miranda</u> rights at approximately 9:05 a.m. Burnette smelled the strong odor of alcohol about appellant, saw that her stockings were torn, and noticed her chest was visible through her clothing. Officer Burnette informed appellant of Code § 18.2-268.2, the implied consent law, at 9:07 a.m.

Appellant supplied the officers with various versions of her whereabouts that day and the prior evening. Appellant admitted she visited three bars the prior evening and consumed four White Russian mixed-alcoholic beverages. Appellant denied any involvement in the hit and run incident.

Police transported appellant to the police station for the administration of a breath alcohol test. Appellant refused to allow Officer Jim Murphy, a licensed breath test operator, to administer the breathalyzer test, as she continued to cough despite his contrary instructions. When a magistrate informed appellant she would be charged with refusal to take the breathalyzer test if she did not cooperate, appellant acquiesced to a breathalyzer test at 10:05 a.m. Appellant's blood alcohol level registered at .11 percent.

Police did not arrest appellant for driving under the influence of alcohol or involuntary manslaughter; rather she was directly indicted for these offenses on March 2, 1994, five months after they occurred. A bench trial was held. Appellant objected to the admission of the breathalyzer test results,

3

asserting that the police did not arrest her for driving under the influence within two hours of the offense, as required by Code § 18.2-268. Appellant also argued she never voluntarily chose to undergo a breathalyzer test instead of a blood test. The trial court overruled the objection and admitted into evidence the certificate of analysis and the test operator's testimony. The trial court also overruled appellant's motion to strike the evidence and found appellant guilty of both offenses.

## II.

### USE OF BREATHALYZER TEST RESULTS

Virginia's "implied consent" law, as it existed at the time of the offense, provided in pertinent part:

> (A) Any person . . . who operates a motor vehicle upon a highway . . . in this Commonwealth shall be deemed thereby, as a condition of such operation, to have consented to have samples of his blood, breath, or both blood and breath taken for a chemical test to determine the alcohol, drug, or both alcohol and drug content of his blood, if he is arrested for [a] violation of § 18.2-266 [driving under the influence] . . . or of a similar ordinance within two hours of the alleged offense.

Code § 18.2-268.2(A)(emphasis added). See Wendel v. Commonwealth, 12 Va. App. 958, 961, 407 S.E.2d 690, 692 (1991)("One safeguard . . . requires that an accused be arrested within two hours of the alleged offense in order for the test results to be admissible at trial"). If the blood or breathalyzer test reveals a particular level of blood alcohol content (.10 percent at the date of the instant offense), the

Commonwealth is entitled to a rebuttable presumption that the defendant was intoxicated. Code § 18.2-269; Overbee v. Commonwealth, 227 Va. 238, 243, 315 S.E.2d 242, 244 (1984); Bowman v. Commonwealth, 201 Va. 656, 662, 112 S.E.2d 887, 891 (1960).

The Commonwealth concedes that because police failed to arrest appellant for driving under the influence of alcohol within two hours of the accident, the certificate of analysis was inadmissible at trial. However, the Commonwealth asserts that other evidence presented, including the test operator's testimony, proved appellant's intoxication, and, therefore, the introduction of the certificate was harmless error. The Commonwealth also contends exigent circumstances justified the administration of the breathalyzer test. We disagree with the Commonwealth.

A.

HARMLESS ERROR

Three cases guide our analysis of the harmless error issue: Thomas v. Town of Marion, 226 Va. 251, 308 S.E.2d 120 (1983); Overbee v. Commonwealth, 227 Va. 238, 315 S.E.2d 242 (1984); and Durant v. City of Suffolk, 4 Va. App. 445, 358 S.E.2d 732 (1987), all decided under former Code § 18.2-268, the predecessor to current Code § 18.2-268.2.

In Thomas, the defendant was involved in a motor vehicle accident and was shortly thereafter interrogated at the hospital.

5

A police officer noticed that the defendant smelled strongly of alcohol, and the defendant admitted having consumed alcoholic beverages earlier that day. Thomas, 226 Va. at 253, 308 S.E.2d at 121. Police served an arrest warrant on the defendant three hours after the accident, at which time the defendant submitted to a breath test. His blood alcohol content registered .17 percent. Id. at 253, 308 S.E.2d at 121-22. The Commonwealth introduced the test results at the defendant's jury trial over his objection, and he was convicted of driving under the influence of alcohol. Id. at 252-53, 308 S.E.2d at 121-22.

The Supreme Court reversed the conviction, stating, "[s]ince the arrest was untimely, the defendant is not deemed to have consented to the testing of his breath under the 'implied consent' law." Id. at 254, 308 S.E.2d at 122. The Court held receipt of the certificate into evidence was improper and recognized the prejudicial effect the rebuttable presumption of intoxication had on the fact finder.

> Because it is probable the jury attached great weight to the incriminating information in the certificate, admission of the exhibit was reversible error. Therefore, we do not reach the question [of] whether other evidence of intoxication, standing alone, is sufficient to sustain the drunk driving conviction.

Id.

The next year, the Supreme Court visited the same issue when it decided Overbee. In Overbee, police found the defendant parked in an emergency lane on a highway at 9 p.m. 227 Va. at

6

240, 315 S.E.2d at 243. A police officer smelled alcohol on the defendant's breath and saw that his eyes were red; the defendant stated that he had consumed one beer. Id. After police arrested the defendant at 9:13 p.m., they administered a breathalyzer test, which showed the defendant's blood alcohol content to be .16 percent. Id. at 241, 315 S.E.2d at 243. The defendant maintained he consumed no alcohol prior to parking his vehicle but had consumed wine only after stopping the vehicle. The defendant moved to suppress the breathalyzer test results and the test operator's testimony on the ground that he had not been arrested within two hours of "operating" a vehicle while under the influence of alcohol. The trial court denied the motion, and the jury found the defendant guilty of driving under the influence of alcohol. Id. at 242, 315 S.E.2d at 243.

The Supreme Court reversed the defendant's conviction, holding that he was not operating his truck when arrested. Therefore, the Court held that the test certificate was inadmissible. Id. at 242, 315 S.E.2d at 244. The Court recognized, "[i]f the certificate of analysis of the breath test were admissible, the Commonwealth would be entitled to a rebuttable presumption that [the defendant] was intoxicated, since his blood-alcohol content was greater than 0.10%." Id. at 243, 315 S.E.2d at 244 (citing former Code § 18.2-269(3)). The Overbee Court then attempted to determine whether the defendant's guilt or innocence could be "determined from the other evidence

7

of his condition at the time of the alleged offense."  Id. at 244, 315 S.E.2d at 244-45.  The Court concluded it could not answer this question, which mandated a reversal of the case.

> We cannot say that the evidence, exclusive of the certificate of analysis, was insufficient as a matter of law to support [the defendant's] conviction.  Nor can we say that the evidence, without the certificate, was so overwhelming as to render harmless the error in admitting the certificate.

Id. at 245, 315 S.E.2d at 245.  See also Essex v. Commonwealth, 228 Va. 273, 286, 322 S.E.2d 216, 223 (1984)(stating that where a blood alcohol test was not conducted in accordance with former Code § 18.2-268, the test results could be used as probative evidence of intoxication without a statutory presumption of intoxication).

Finally, in Durant, this Court reversed the defendant's conviction for driving under the influence of alcohol after employing the harmless error analysis used by the Supreme Court in Overbee.  In Durant, which was a bench trial, the facts showed that the defendant was "swerving all over the road," as a police officer followed him for "five or six miles."  When taken into custody, the defendant had a strong odor of alcohol about his person, his speech was "'confused,'" and "'his balance and walking ability were somewhat vague.'"  4 Va. App. at 446-47, 358 S.E.2d at 733.  In Durant, this Court determined, for reasons unimportant to the instant case, that the defendant was not arrested for driving under the influence of alcohol pursuant to a

warrant or a valid exception to the warrant requirement. Id. at 448, 358 S.E.2d at 734. Therefore, the defendant was not legally arrested within two hours of the alleged offense and was not bound under the statute to submit to the breathalyzer test. "The result of the breathalyzer test administered to [the defendant] should not have been admitted in evidence at his trial." Id. at 449, 358 S.E.2d at 734 (footnote omitted).

> whether the admission of the breathalyzer test constituted harmless error. We are unable to say what effect the breathalyzer evidence had on the trial court's decision; therefore, we cannot find as a matter of law that the result would not have been different if such evidence had not been considered by the trial court. The error was not harmless . . . .

Id. (emphasis added).

Under the facts of this case, we adopt the reasoning expressed by this Court in Durant. We conclude, after examining the record, that we are unable to determine whether the trial court applied Code § 18.2-269's rebuttable presumption of intoxication to prove appellant's intoxication. While the Commonwealth presented other independent evidence of appellant's intoxication, "[w]e are unable to say what effect the breathalyzer evidence had on the trial court's decision." Durant,[1] 4 Va. App. at 449, 358 S.E.2d at 734. Although in a

---

[1] We recognize that the Supreme Court has also affirmed a conviction for driving under the influence of alcohol, under a harmless error analysis, without discussing the presumption of intoxication that accompanies certain results. In Brooks v. City of Newport News, 224 Va. 311, 295 S.E.2d 801 (1982), the Supreme

9

bench trial, "the trial judge is presumed to disregard prejudicial or inadmissible evidence," Hall v. Commonwealth, 14 Va. App. 892, 902, 421 S.E.2d 455, 462 (1992)(en banc), this presumption only controls "in the absence of clear evidence to the contrary." Id. See Mason v. Commonwealth, 219 Va. 1091, 1098, 254 S.E.2d 116, 120, cert. denied, 444 U.S. 919 (1979); Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977); Brown v. Commonwealth, 8 Va. App. 126, 133, 380 S.E.2d 8, 12 (1989); Cole v. Commonwealth, 16 Va. App. 113, 116, 428 S.E.2d 303, 305 (1993).

In this case, the trial court admitted the certificate after ruling that the Commonwealth had complied with the implied consent law. Subsequent to the certificate's admission, the Commonwealth failed to offer evidence on the significance of the test results in the certificate. Clear evidence therefore

---

Court held that introduction of the test results was in error. However, the Court stated the "result of a breath analysis is but auxiliary proof which may tend to corroborate evidence of the objective symptoms" of intoxication. Id. at 316, 295 S.E.2d at 804. The Court also stated:

> Under the facts and circumstances of this case, the trial court's erroneous ruling admitting the certificate was not fatal to a conviction. The testimony at the trial clearly showed that there was no room for reasonable doubt about [the defendant's] actual condition at the time of his arrest. The evidence of his guilt was clear and compelling, and the erroneous ruling of the trial court was harmless.

Id. We note that the Supreme Court decided Brooks before Thomas and Overbee.

implies that the trial court applied the statutory presumption of intoxication; we cannot say from the facts and circumstances that this error did not affect the verdict. <u>Lavinder v. Commonwealth</u>, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991)(<u>en banc</u>). Thus, we disagree with the Commonwealth's assertion that the trial court's admission of the test results into evidence was merely harmless error.

11

B.

EXIGENT CIRCUMSTANCES

The Commonwealth argues that the breathalyzer test results were admissible despite the Commonwealth's non-compliance with the statute because exigent circumstances existed.  In support of its argument, the Commonwealth cites Bowman v. Commonwealth, 201 Va. 656, 112 S.E.2d 887 (1960)(decided under former Code § 18-75.1), and Tipton v. Commonwealth, 18 Va. App. 370, 444 S.E.2d 1 (1994).  In Bowman, the defendant was involved in a car accident.  He was informed that he would be charged with driving under the influence of alcohol and had a right to submit to a test to determine his blood alcohol level.  Bowman, 201 Va. at 657-58, 112 S.E.2d at 888-89.  The defendant requested a blood test and lapsed into a coma shortly thereafter, before his arrest.  The certificate of analysis, which showed the defendant's blood alcohol level to be .26 percent, was introduced at trial over his objection that he was not arrested within two hours of the offense and the sample was taken before his arrest.  The trial judge found appellant guilty of driving under the influence of alcohol.  The Supreme Court affirmed the conviction and approved the introduction of the test results, along with trial court's use of the accompanying presumption of intoxication, noting that "unusual circumstances caused [the officer] to delay the arrest for humane reasons."  Id. at 661, 112 S.E.2d at 891.

12

The Commonwealth correctly asserts that <u>Bowman</u> allowed the use of test results which were taken pursuant to the exigent circumstances exception and allowed the statutory presumption to be applied <u>even where</u> the Commonwealth presented no additional evidence to explain the test results.  However, <u>Bowman</u> was based on "unusual circumstances" relating to "humane reasons" benefitting the defendant, which the Supreme Court held justified the delay in arresting the defendant.

Since <u>Bowman</u>, the Supreme Court has decided <u>Thomas</u>, <u>Overbee</u>, and <u>Essex</u>.  In <u>Essex</u>, the Supreme Court held that although the defendant's blood alcohol test was not taken in accordance with former Code § 18.2-268, the test results could be introduced as "other relevant evidence" of drunk driving.  228 Va. at 286, 322 S.E.2d at 223.  The Court wrote that while the test evidence was probative, it:

> <u>raised no legal presumption of intoxication</u>.  Code § 18.2-269 expressly provides that the presumptions it creates arise only when a blood-alcohol test is conducted "in accordance with the provisions of [former Code] § 18.2-268."  The record of the pretrial hearing shows, and the Attorney General concedes, that the hospital test was not conducted in such manner.  Yet, the trial court, borrowing from the language of § 18.2-269(3), instructed the jury that "[i]f there was at the time zero point 10 percent or more of alcohol in the accused's blood <u>it shall be presumed</u> that the accused was under the influence of alcoholic intoxicants."  Since the only evidence to support that instruction was derived from the test performed at the hospital, we hold that the instruction constituted prejudicial error in the trial of the drunken driving charge.

<u>Id.</u> (footnote omitted)(emphases added).

13

In Tipton v. Commonwealth, this Court affirmed the defendant's involuntary manslaughter conviction. The defendant was involved in a fatal two-car accident and underwent a blood alcohol test. The trial court recognized that the certificate of the blood test analysis was inadmissible because no valid arrest occurred within two hours after the accident. 18 Va. App. at 372, 444 S.E.2d at 2. However, the trial court found exigent circumstances justified the taking of the defendant's blood. The trial court allowed the Commonwealth to introduce the results of the blood test through testimony of the chemist who performed the test. Id. The certificate of analysis was not introduced, nor was any presumption applied.

This Court held that the defendant's "alcohol blood reading was properly obtained pursuant to the exigent circumstances exception," not former Code § 18.2-268(B), as the delay necessary to obtain a search warrant to obtain a blood sample for a blood test may have resulted in the destruction of valuable evidence. Id. at 373, 444 S.E.2d at 3. Importantly, the Commonwealth presented independent expert testimony showing that the defendant's blood alcohol content would cause a driver to "experience a loss of information processing skills, diminished tracking skills, some loss of peripheral vision, and slowed reaction." Id. at 372-73, 444 S.E.2d at 2.

The Tipton case stands in sharp contrast to both Bowman and the instant case. In Tipton, although the Commonwealth proved

14

appellant's intoxication with the aid of the test results, it did so without the introduction of the certificate of analysis and the accompanying statutory presumption. Instead, the Commonwealth presented other independent testimony interpreting the test results.

In this case, the Commonwealth never presented expert testimony of the sort presented in Tipton to explain the significance of the test results. Therefore, assuming without deciding that exigent circumstances justified seizure of appellant's person and the taking of her breath for analysis,[2] the Commonwealth nevertheless failed to introduce independent evidence of the significance of the test results. Without such evidence, we are unable to determine whether the trial court improperly relied on the statutory presumption of intoxication.

III.

SUFFICIENCY OF EVIDENCE TO SUPPORT INVOLUNTARY MANSLAUGHTER

The trial court found appellant guilty of involuntary manslaughter in violation of Code § 18.2-36.1, which stated at the time of the offense, "[a]ny person who, as a result of driving under the influence in violation of subdivision (ii), (iii), or (iv) of § 18.2-266, unintentionally causes the death of another person, shall be guilty of involuntary manslaughter."

---

[2] The Commonwealth argues the dissipating nature of alcohol in blood mandated that the police act quickly to preserve evidence of the crime. See Tipton v. Commonwealth, 18 Va. App. 370, 374, 444 S.E.2d 1, 3 (1994).

15

Code § 18.2-36.1(A)(emphasis added).  Code § 18.2-266 stated, at the time of the offense:

> It shall be unlawful for any person to drive or operate any motor vehicle, engine or train (i) while such person has a blood alcohol concentration of .10 percent or more by weight by volume as indicated by a chemical test administered as provided in this article, (ii) while such person is under the influence of alcohol, (iii) while such person is under the influence of any narcotic drug or any other self-administered intoxicant or drug of whatsoever nature, or any combination of such drugs, to a degree which impairs his ability to drive or operate any motor vehicle, engine or train safely, or (iv) while such person is under the combined influence of alcohol and any drug or drugs to a degree which impairs his ability to drive or operate any motor vehicle, engine or train safely.

In a prosecution for involuntary manslaughter, the Commonwealth must prove an "'accidental killing which, although unintended, is the proximate result of negligence so gross, wanton, and culpable as to show a reckless disregard for human life.'"  Keech v. Commonwealth, 9 Va. App. 272, 275, 386 S.E.2d 813, 814 (1989)(quoting King v. Commonwealth, 217 Va. 601, 607, 231 S.E.2d 312, 316 (1977)).  However, in a prosecution under Code § 18.2-36.1(A), as in this case, the Commonwealth is obligated to prove the accused drove "under the influence in violation of subdivision (ii), (iii), or (iv) of § 18.2-266."  Pollard v. Commonwealth, 20 Va. App. 94, 99, 455 S.E.2d 283, 286 (1995)(citing Code § 18.2-36.1(A)).

The reasoning applied in Section II, supra, is equally applicable here.  On this record, we are unable to determine whether the trial court applied the statutory presumption of

16

intoxication.  The trial court allowed the breathalyzer test results to be introduced into evidence as being in compliance with the implied consent statute.  Unlike <u>Tipton</u>, no expert testimony in the case explained the significance of the test results.  While the Commonwealth presented persuasive evidence of appellant's intoxication apart from the test results, we are unable to conclude that the trial court's reliance upon the test results and the presumption of intoxication were harmless in finding that appellant acted with the criminal negligence necessary to support an involuntary manslaughter conviction.

Accordingly, we reverse both convictions and remand for further proceedings if the Commonwealth be so advised.

<u>Reversed and remanded.</u>

17