COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Decker, Judge O'Brien and Senior Judge Humphreys


MARVIN MAURICE MOORE

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0648-24-2           CHIEF JUDGE MARLA GRAFF DECKER
                                                    MAY 27, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Clarence N. Jenkins, Jr., Judge[1]

(Leonard McCall; McCall Law P.C., on brief), for appellant.

(Jason S. Miyares, Attorney General; Timothy J. Huffstutter,
Assistant Attorney General, on brief), for appellee.


Marvin Maurice Moore appeals his convictions, following a jury trial, for the attempted

malicious wounding of B.M.[2] and the malicious wounding of Abigail Cleaver in violation of

Code §§ 18.2-26 and -51.  Moore, for the first time on appeal, argues that there was insufficient

evidence to show Cleaver suffered a "statutory defined injury."  He also contends that the

evidence was insufficient to prove these charges because the Commonwealth did not

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] While the final orders in this case were signed by Judge Jenkins, Judge Designate
Margaret P. Spencer presided over the trial and sentencing hearing.

[2] At the time of these events, B.M. was a minor.  We use her initials to protect her
privacy.

demonstrate that he acted with malice and that he had the requisite intent to "permanently maim, disfigure, or disable" the victims. For the following reasons, we affirm the convictions.[3]

BACKGROUND[4]

I. Attack on B.M.

On July 17, 2020, Sean McCormick and his daughter, B.M., went to a fast-food restaurant. After ordering their food, McCormick and B.M. took their drinks to a table in the dining area. McCormick returned to the front counter to wait for their meal, and B.M. sat down at the table near where Moore was already seated and turned her attention to her cell phone.

While McCormick was at the counter, Moore got up from his seat and picked up a "metal chair" from his table. He carried the chair horizontally and chest level and walked past B.M., hitting her in the head with the chair's legs. Turning around from the counter, McCormick noticed B.M. "holding her head." She appeared "[v]ery upset" and "emotional." When he asked what was wrong, B.M. told him that Moore had hit her in the head with a chair. She continued to appear "upset" and momentarily "disoriented" while talking with McCormick.

McCormick confronted Moore and asked him if he apologized to B.M. Moore told McCormick he was "not going to apologize" and "to shut that little dramatic bitch up." The men postured at each other for several moments, but McCormick eventually sat down at the table with

---

[3] Having examined the briefs and record in this case, the panel unanimously holds that oral argument is unnecessary for two reasons. First, "the appeal is wholly without merit." *See* Code § 17.1-403(ii)(a); Rule 5A:27(a). Second, "the dispositive issue or issues have been authoritatively decided, and the appellant has not argued that the case law should be overturned, extended, modified, or reversed." *See* Code § 17.1-403(ii)(b); Rule 5A:27(b).

[4] On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires the Court to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

B.M. to eat.  Moore, meanwhile, paced nearby and continued to "mouth" at McCormick and B.M.

Eventually, B.M. convinced McCormick that they should leave the restaurant. McCormick noticed a "huge goose egg" on B.M.'s head, and he reported the attack to the police that evening.  He did not immediately report the incident to authorities because he "wanted to get out of the[ restaurant] and not escalate the situation any[]more."

## II.  Attack on Cleaver

On July 21, 2020, Abigail Cleaver was riding home on a Greater Richmond Transit Company (GRTC) bus.  Moore, whom Cleaver did not know, was seated in front of her. Suddenly, Moore "hit [her] in the nose and the chest" with his elbow.  Cleaver was struck "with such force that . . . [she] figured that a whole body had . . . landed on [her]."  Seconds later, Moore hit Cleaver again, this time striking her in the jaw.  Realizing this was not an accident and that she was being attacked, Cleaver changed seats to get away from Moore.  Shortly after the incident, Moore got off the bus.  Cleaver noted that the bus made no "sudden stops or hard brak[es]" that day, and she did not "recall" Moore saying anything to her after striking her. When Cleaver arrived home, she called the police.  She "had a headache[, her] chest was very tight and . . . hurt[,] and [her] jaw hurt."

The next day, Cleaver's headache worsened throughout the day, and her "chest still hurt." Because of her symptoms, Cleaver was unable to work for two days and continued to suffer daily as the bright lights and noises in her work environment aggravated her symptoms.  She sought treatment and was diagnosed with a concussion, which caused her "debilitating" headaches. Cleaver had experienced several concussions prior to this incident, but this concussion was her "worst."  In addition to her daily headaches and sensitivity to light and noise, Cleaver experienced "sensitivity . . . to moving stimulus," "pain behind [her] eyes," and "sore[ness] from

whiplash." Her symptoms persisted for six to seven months and finally abated after completing specialized physical therapy from a concussion specialist.

### III. Trial

The Commonwealth charged Moore with attempted malicious wounding of B.M. and malicious wounding of Cleaver. Moore also was charged with two counts of assault and battery for assaults that occurred that August on two other victims. At the ensuing trial, the jury heard testimony from McCormick, Cleaver, a victim from one of the August assaults, and the investigating officers. Video surveillance of all four incidents was played for the jury and entered into evidence.

After the Commonwealth concluded its case, Moore made a motion to strike the charges arguing, in part, that the Commonwealth failed to prove he had the "intent to maim, disfigure, or disable" Cleaver and B.M. The trial court denied the motion.

Moore testified in his defense. He acknowledged his involvement in three of the four incidents including those with Cleaver and B.M., but he claimed they were accidents. He denied any involvement regarding the fourth attack.

At the conclusion of his evidence, Moore renewed his motion to strike the charges, arguing that the Commonwealth failed to show he acted with malice. He also contended that the Commonwealth failed to prove his intent. Again, the trial court denied his motion. The jury convicted Moore of attempted malicious wounding of B.M. and malicious wounding of Cleaver, as well as the two counts of misdemeanor assault and battery of the other women.[5] The trial court sentenced Moore to twenty-five years and twenty-four months of incarceration, with thirteen years suspended.

---

[5] The two misdemeanor convictions are not at issue in this appeal.

ANALYSIS

I. Preservation of Concussion-as-Bodily-Injury Argument Under Rule 5A:18

For the first time on appeal, Moore argues that Cleaver's concussion did not constitute a bodily injury.

Rule 5A:18 requires that an "objection [be] stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."[6] "Under this rule, a specific argument must be made to the trial court at the appropriate time, or the allegation of error will not be considered on appeal." *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc). "[M]aking one specific argument on an issue does not preserve a separate legal point on the same issue for [appellate] review." *Hicks v. Commonwealth*, 71 Va. App. 255, 266 (2019) (second alteration in original) (quoting *Johnson v. Commonwealth*, 58 Va. App. 625, 637 (2011)); *see Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) ("Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011))); *Ray v. Commonwealth*, 74 Va. App. 291, 306-07 (2022).

"Accordingly, 'this Court "will not consider an argument on appeal [that] was not presented to the trial court."'" *Clark v.* Commonwealth, 78 Va. App. 726, 767 (2023) (alteration in original) (quoting *Farnsworth v. Commonwealth*, 43 Va. App. 490, 500 (2004)). "Specificity and timeliness undergird the contemporaneous-objection rule [and] animate its highly practical purpose." *Bethea*, 297 Va. at 743; *Brown v. Commonwealth*, 279 Va. 210, 217 (2010).

---

[6] Moore "does not ask this Court to invoke the good-cause or ends-of-justice exceptions [recognized by] Rule 5A:18, and we will not apply the exceptions sua sponte." *Terry v. Commonwealth*, 81 Va. App. 241, 254 n.4 (2024).

In a jury trial, the defendant preserves his objections to the sufficiency of the evidence in a motion to strike at the conclusion of the Commonwealth's case if he elects not to introduce evidence of his own, in a motion to strike at the conclusion of all the evidence, or in a motion to set aside the verdict. *See Commonwealth v. Bass*, 292 Va. 19, 32-33 (2016); *Rompalo v. Commonwealth*, 72 Va. App. 147, 155-56 (2020). At trial, in his motion to strike, Moore raised the issues of malice and intent in his argument. Here, he argues for the first time that Cleaver's concussion does not qualify as a bodily injury because it "was a disturbance of a brain function." *See Peters v. Commonwealth*, 72 Va. App. 378, 389-90 (2020) (applying Rule 5A:18 to an element even though the defendant adequately raised a challenge to the sufficiency of the evidence supporting a separate element of the offense). Moore failed to make this argument below, and, therefore, we will not address it.

## II. Sufficiency of the Evidence to Prove Malice and Intent

Moore argues that the trial court erred when it denied his renewed motion to strike the charges and found that the evidence was sufficient to prove he acted with malice and that he had the necessary intent to "permanently maim, disfigure[,] or disable" B.M. and Cleaver.

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "[T]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it." *Commonwealth v. Wilkerson*, ___ Va. ___, ___ (Feb. 20, 2025) (alteration in original) (quoting *Garrick*, 303 Va. at 182). This Court must "review factfinding with the highest degree of appellate deference." *Commonwealth v. Barney*, 302 Va. 84, 96 (2023) (quoting *Bowman v. Commonwealth*, 290 Va. 492, 496 (2015)). As such, "when reviewing whether the evidence was sufficient . . . '[t]he only relevant question is . . . whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Wilkerson*, ___

Va. at ___ (second and third alteration in original) (emphasis omitted) (quoting *Garrick*, 303 Va. at 182). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Similarly, "[t]he sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder." *Blankenship v. Commonwealth*, 71 Va. App. 608, 619 (2020) (quoting *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017)); *see Gerald v. Commonwealth*, 295 Va. 469, 486 (2018). In its role of deciding witness credibility, a trier of fact is "at liberty to discount [the accused's] self-serving statements as little more than lying to conceal his guilt." *Poole v. Commonwealth*, 73 Va. App. 357, 369 (2021) (quoting *Becker v. Commonwealth*, 64 Va. App. 481, 495 (2015)); *see also Maust v. Commonwealth*, 77 Va. App. 687, 702-03 (2023) (en banc) (showing the fact finder rejecting a defendant's testimony at trial).

For both attempted malicious wounding of B.M. and malicious wounding of Cleaver, it was necessary for the Commonwealth to prove that Moore acted maliciously and with the requisite intent to harm the victims. *See* Code § 18.2-51 (defining malicious wounding); *Goodwin v. Commonwealth*, 71 Va. App. 125, 147 (2019). *See generally Fletcher v. Commonwealth*, 72 Va. App. 493, 506 (2020) ("An attempt to commit a crime is composed of two elements: (1) [t]he intent to commit it; and (2) a direct, ineffectual act done towards its commission." (quoting *Haywood v. Commonwealth*, 20 Va. App. 562, 565 (1995))). The evidence needed to prove both of these elements is well established.

The law regarding malice, a challenged element of the offenses, is clearly defined. "In order for an act to be done maliciously, [it] must be done 'wil[l]fully or purposefully.'" *Diaz v.*

*Commonwealth*, 80 Va. App. 286, 313-14 (2024) (quoting *Woods v. Commonwealth*, 66 Va. App. 123, 131 (2016)). "[M]alice may be either express or implied by conduct." *Watson-Scott v. Commonwealth*, 298 Va. 251, 256 (2019) (quoting *Essex v. Commonwealth*, 228 Va. 273, 280 (1984)).

Similarly, the law regarding the requisite intent for malicious wounding, the other challenged element of the offenses, is also clear. Under the Code, the necessary specific intent is "to maim, disfigure, disable, or kill" the victim. Code § 18.2-51. In establishing this element, the Commonwealth was required to prove that the accused *intended* to permanently harm the victim. *See Commonwealth v. Perkins*, 295 Va. 323, 330 (2018). But it did not need to show that the harm was in fact permanent. *See id.*

The questions of whether a defendant acted with malice and the requisite intent are factual ones solely for determination by the factfinder, in this case the jury. *See Fary v. Commonwealth*, 77 Va. App. 331, 342 (2023) (en banc), *aff'd*, 303 Va. 1 (2024); *Palmer v. Commonwealth*, 71 Va. App. 225, 237 (2019). In addition, both malice and intent can be proven by circumstantial evidence. *Seat v. Commonwealth*, 81 Va. App. 752, 762 (2024); *Palmer*, 71 Va. App. at 237. "[C]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that [it] is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (first alteration in original) (quoting *Dowden v. Commonwealth*, 260 Va. 459, 468 (2000)).

With this legal backdrop in mind, we turn to the specific sufficiency of the evidence challenges raised by Moore.

### A. Attack on B.M.

Moore asserts that his testimony established that he accidentally hit B.M. as he moved a chair from one location to another in the restaurant. Moore also notes that B.M., who was away at

college at the time of the trial, did not testify and that there was no evidence to establish the force with which he hit B.M.

The jury had the opportunity to weigh Moore's testimony and consider the points he now raises. It rejected his theory of accident and accepted the credible evidence supporting his attempted malicious wounding conviction. The jury heard from McCormick, the victim's father, about the details of the attack including Moore's statement that he was "not going to apologize and that [McCormick] need[ed] to shut that little dramatic bitch up." *See Fary*, 77 Va. App. at 342 (noting that intent can be established "by circumstances, including the 'words or conduct' of the alleged offender" (quoting *Secret v. Commonwealth*, 296 Va. 204, 228-29 (2018))). McCormick also testified to the large "goose egg" on B.M.'s head, an observation that provided insight into the force used in striking her. Significantly, the jury saw video footage of the entire incident, which corroborates McCormick's version of events. *See Barney*, 302 Va. at 97 (noting the deference on appeal given to a factfinder's interpretation of video evidence). It was able to see firsthand the way in which Moore carried the fifteen-pound chair that allowed it to be swung like a weapon and the force he used to hit B.M. in the head with it.

The video footage also undermines Moore's hypothesis of innocence. *See generally Commonwealth v. Moseley*, 293 Va. 455, 464 (2017) (explaining that the reasonable hypothesis of innocence principle "is 'simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt'" (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003))). Moore claimed that he moved the chair to sit in a different part of the restaurant, but chairs are visible in the area where he claimed there were none. He also testified that he wanted to move to get better wireless reception, but his phone remained plugged into the wall by his original seat for the majority of the encounter. *See, e.g.*, *Evans v. Commonwealth*, 82 Va. App. 612, 637 (2024) (explaining that the jury, as fact finder, can "conclude" that the appellant "is lying to conceal his

guilt" with "self-serving testimony" (quoting *Maust*, 77 Va. App. at 703)). Finally, the jury did not consider this incident in isolation as it heard and viewed evidence of three other incidents that involved Moore attacking unsuspecting women without provocation. *See Garrick*, 303 Va. at 184 (stating that "the combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion" (quoting *Moseley*, 293 Va. at 463)).

This evidence was sufficient to prove that Moore struck B.M. with the chair maliciously and with the intent to permanently harm her rather than by accident. *See generally Wilkerson*, ___ Va. at ___ (affirming as reasonable the factfinder's rejection of the defendant's hypothesis of innocence). The trial court did not err in its denial of Moore's motion to strike the attempted malicious wounding offense.

### B. Attack on Cleaver

Moore challenges his malicious wounding conviction. He suggests that his testimony established that while riding on a GRTC bus he slipped on spilled beer and accidentally hit Cleaver.[7] He also contends he "apologized" to Cleaver after he hit her.

At trial, Cleaver testified that while traveling on a GRTC bus Moore struck her in the chest. She described the force as if "a whole body had . . . landed on [her]." Seconds later, Moore struck her in the jaw. After the second blow, Cleaver believed that Moore was attacking her and tried to get away from him. Moore, meanwhile, got off the bus. *See Fletcher*, 72 Va. App. at 506 ("[T]he fact finder may infer that a person intends the immediate, direct, and necessary consequences of his voluntary acts." (alteration in original) (quoting *Moody v. Commonwealth*, 28 Va. App. 702, 706-07 (1998))). Cleaver noted that she experienced soreness in her chest and jaw as well as debilitating headaches in the days after the incident.

---

[7] At trial, Moore asserted that he only struck Cleaver "once" and that a pole stopped him from hitting her a second time. But Moore appears to concede otherwise as his brief states that "[v]ideo evidence showed [him] slip and fall backwards twice making contact with Cleaver."

Again, in addition to Cleaver's testimony, the jury saw surveillance footage from the bus that showed Moore strike Cleaver not once but twice before leaving the bus. Cleaver later was diagnosed with a concussion. This Court has previously held that "a rational fact finder could discern an intent to permanently injure" where the victim was struck by only one punch with such "force" that he "suffered a concussion[ and] two cuts in his ear. *Johnson v. Commonwealth*, 53 Va. App. 79, 99, 104-05 (2008); *see also Goodwin*, 71 Va. App. at 148 ("[I]njuries inflicted by punching or kicking can support a conviction of malicious wounding."). Here, the victim was struck twice and testified about the force and effects. Moreover, this incident was not considered in isolation, and the jury had before it the other three attacks involving women when it was considering Moore's hypothesis of innocence. *See generally Wilkerson*, ___ Va. at ___ (explaining that when "determining whether the evidence is sufficient . . ., 'an appellate court must consider all the evidence admitted at trial,' and must not view the individual facts in isolation" (emphasis omitted) (quoting *Garrick*, 303 Va. at 183-84)). And the jury, as the trier of fact, was entitled to reject Moore's claim of innocence and his "self-serving testimony." *See, e.g.*, *Rich v. Commonwealth*, 292 Va. 791, 802 (2016).

Based on the totality of the evidence, the record supports the jury's findings that Moore acted with malice and intended to permanently injure Cleaver. Consequently, the trial court did not err when it denied Moore's motion to strike the malicious wounding charge.

CONCLUSION

Moore failed to preserve his challenge to the element of injury for his malicious wounding charge. In addition, the evidence proved that he acted with malice and the intent necessary for attempted malicious wounding and malicious wounding when he attacked B.M. and Cleaver. For these reasons, the trial court's judgment is affirmed.

*Affirmed.*